**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| EDWARD C. MCREADY, | | |
| | * | |
| **Plaintiff,** | | |
| v. | * | Case No.: GJH-19-2401 |
| | | |
| MONTGOMERY COMMUNITY | * | |
| COLLEGE, *et al.*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Edward McReady brought this civil action as a *pro se* litigant against his former employer, Montgomery Community College, and several of its officials and staff (collectively, "Defendants") alleging violations of his right to free expression guaranteed under the First Amendment of the United States Constitution and Article 40 of the Maryland Declaration of Rights, abusive discharge from public employment, breach of contract, and various permutations of tortious interference with current and prospective employment relations. ECF No. 1. Pending before the Court is Defendants' Motion to Dismiss Complaint. ECF No. 10. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant's Motion to Dismiss is granted.

## I.      BACKGROUND[1]

### A.      Factual Background

Plaintiff Edward McReady was first employed by Montgomery College ("the College")

---

[1] Unless otherwise stated, the background facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true.

as a part-time professor in the Lecturer pay rank from Fall 2000 through Fall 2005. ECF No. 1 ¶ 20. At the end of the Fall 2005 semester, Plaintiff resigned his part-time faculty position and notified the College that he had accepted a position as a full-time Assistant Academic Director of Accounting and Professor at another university.[2] *Id.* ¶ 21. However, Plaintiff returned to the College's part-time faculty at the beginning of the Spring 2014 semester. *Id.* ¶¶ 22.

### i.      Plaintiff's First Conflict with the College's Management

From Spring 2014 through Summer 2016, the College issued Plaintiff written contracts at the Lecturer pay scale to teach one or two Accounting courses each semester. ECF No. 1 ¶ 30. In August 2016, however, Plaintiff learned that, under the terms of the Collective Bargaining Agreement between the College and Services Employees International Union, Local 500, CtW ("Collective Bargaining Agreement"), the College should have placed him in the Adjunct II pay rank when the College rehired him in Spring 2014. *Id.* ¶¶ 26, 38. Plaintiff contacted Defendant Elaine Doong, the Human Resource Department's Payroll Manager, and requested placement in the Adjunct II pay rank retroactive to the Spring 2014 semester with full back pay from that semester forward. *Id.* ¶ 38. On September 22, 2016, Plaintiff was notified that he had been placed in the Adjunct I pay rank effective retroactively to the beginning of the Fall 2016 semester, but the notification did not address his back pay request. *Id.* ¶ 39.

Finding this result unsatisfactory, Plaintiff contacted Defendants Katherine Michaelian[3]

---

[2] Notably, this position also ended in hostile emails resulting in termination and then litigation. *McReady v. O'Malley*, 804 F. Supp. 2d 427, 438–39 (D. Md. 2011), *aff'd*, 468 F. App'x 391 (4th Cir. 2012) ("Despite Dr. McReady's vigorous assertions that he was terminated for exercising his rights to free speech, as guaranteed by the First Amendment . . . , the uncontroverted evidence shows that Dr. McReady's hostile emails and insubordinate comments were not protected by the First Amendment").

[3] Defendant Michaelian was, at all times relevant to this case, the Instructional Dean for the College's Department of Business, Economics, Accounting, Computer Application, Hospitality Management, and Paralegal Studies ("BEACHMPS") in its Academic Affairs Division. ECF No. 1 ¶ 7.

and Carolyn Terry[4], requesting that they honor his "back pay request." *Id.* ¶ 41. Defendant

Michalian referred the back pay request to Defendant Krista Walker[5] in early October and

Defendant Walker issued a second decision on October 21, 2016. *Id.* ¶¶ 41, 43. In the second

decision, Defendant Walker notified Plaintiff that he would be placed in the Adjunct II pay rank

effective retroactively to the beginning of the Fall 2016 semester, but denied his back pay

request. *Id.* ¶ 43. This decision was approved by Defendant Robert Roop, the Chief Human

Resource Officer, *id.* ¶ 11, on November 4, 2016. *Id.* ¶ 47.

Again dissatisfied with management's decision, Plaintiff: (1) filed a grievance on

November 14, 2016, *id.* ¶ 57; (2) emailed Defendant Roop on November 15, 2016 "accus[ing]

him of abusing his authority and violating [the College's] Visions, Mission, and Standards

Service Statement," *id.* ¶ 69; and (3) attempted to elevate the issue to Defendant DeRionne

Pollard, the College's President, on November 29, 2016, *id.* ¶¶ 52–53. None of these actions

received an adequate response in Plaintiff's view. Defendant Michaelian decided Plaintiff's

grievance on January 3, 2017, again denying his back pay request. *Id.* ¶¶ 57–58. Defendant

Michael Carson[6] wrote to Plaintiff's union representative on November 15, 2016, stating that

Plaintiff could face discipline under the College's workplace violence policy "for his bullying

and uncivil behavior . . . ."[7] *Id.* ¶¶ 70–71. And Plaintiff did not receive a response from

Defendant Pollard, instead Defendant Janet Wormack, the College's Senior Vice President for

---

[4] Defendant Terry was, at all times relevant to this case, the College's Assistant Vice President for Academic Affairs. ECF No. 1 ¶ 6.
[5] Defendant Walker was, at all times relevant to this case, the College's Director of Human Resources Operations. ECF No. 1 ¶ 13.
[6] Defendant Carson was, at all relevant times to this case, a College Human Resources Research Specialist. ECF No. 1 ¶ 14.
[7] This was the first of multiple warnings from Defendant Carson regarding Plaintiff's use of his College email. *See* ECF No. 1 ¶ 74 ("Your emails to the many people you copy are both unnecessary, disruptive and inappropriate. Please direct any email or other inquiries related to your employment to me."); ECF No. 1 ¶ 108 ("refrain from mailing all part-time faculty and other individuals that are not part of the grievance process . . . . As I previously mentioned, it is disruptive and hinders the neutrality of your grievance.")

Administrative and Fiscal Affairs, *id.* ¶ 10, responded to Plaintiff's emails, but failed to provide a substantive response to Plaintiff's concerns. *Id.* 1 ¶ 55. Defendants Wormack and Pollard also failed to discipline Defendants Roop and Carson as requested in Plaintiff's November 29 email. *Id.* ¶ 79. After failing to receive the response he wanted from the College's upper management, Plaintiff brought his complaints to the Union in an email that copied Defendants Pollard, Wormack, Terry, Roop, Carson, and all Part-Time Faculty. *Id.* ¶ 80.

### ii.    Plaintiff's Second Conflict with the College's Management

In October 2016, Plaintiff received an email from a human resources staff member informing him that it was "the College's intention to offer [him] an assignment consisting of 8 Instructional [credit hours]" for the Spring 2017 semester. ECF No. 1 ¶ 81 (alteration in original). Consequently, in November, Plaintiff emailed Defendant Michaelian requesting that he be considered for assignment to two of several four-credit-hour Accounting courses that had yet to be designated for assignment. *Id.* ¶ 83. Defendant Michaelian responded, informing Plaintiff that Ms. Andrea Foster, his Department Chair on the Takoma Park campus, would be in touch regarding his assignments for the Spring 2017 semester. *Id.* ¶ 84. The following day, Ms. Foster informed Plaintiff that he had been "added to the Spring 2017 schedule of Accounting courses." *Id.* ¶ 85. Plaintiff thanked Ms. Foster, and accepted her decision. *Id.*

The conflict came on January 12, 2017, when James Baisey, the College's Tacoma Park course coordinator for the BEACHMPS Accounting program, notified Plaintiff that "[d]ue to low enrollments . . . one or both of [Plaintiff's] classes may need to be reassigned[.]" *Id.* ¶ 87. On January 18, 2017, Plaintiff informed Mr. Baisey, Ms. Foster, and Defendant Michaelian that his name had been removed from one of the courses for which he had been designated for assignment and asked whether he would be "assigned one of the . . . presently unassigned

4

Accounting courses on the Rockville campus. . . ?" *Id.* ¶ 88. Defendant Michaelian responded:

"The classes at Rockville are being assigned to a full-time faculty member to make load and to

part-time faculty with good faith consideration [for] this Spring [20<u>17</u>] semester." *Id.* ¶ 89

(alteration in original). Plaintiff contends Defendant Michaelian's statement was intentionally

false because "Defendant Michaelian knew that she was approving the assignment of at least one

of those remaining unassigned four classes to a part-time faculty member, *i.e.*, Darryl Lesesne

who did **not** have good faith consideration." *Id.* ¶¶ 89–90 (emphasis in original). Plaintiff refers

to this misrepresentation as Defendant Michaelian's "Dishonesty and Malfeasance." *Id.* ¶ 99.

Following this initial exchange, Plaintiff and Defendants engaged in numerous

communications surrounding Plaintiff's course assignment and Defendant Michaelian's alleged

Dishonesty and Malfeasance.

- **January 19, 2017:** Plaintiff emailed Defendant Michaelian advising her that her January
  18 statement was false and requested that she take corrective action. *Id.* ¶ 91–92.

- **January 20, 2017:** Defendant Michaelian responded claiming "the cancellation of a
  course previously assigned to a full-time professor in BEACHMPS 'necessitated' that she
  give the full-time professor one of the courses previously designated for assignment to
  [Plaintiff.]" *Id.* ¶ 94.

- **January 20, 2017 [2:26 PM]:** Plaintiff responded to Defendant Michaelian and
  explained in detail why her justification for the reassignment was flawed and asked her to
  reassign Professor Lesesne's course to Plaintiff. *Id.* ¶ 97.

- **January 20, 2017 [4:04PM]:** Defendant Michaelian responded stating that she stood by
  her decision and that Plaintiff could file a grievance if he wished. *Id.* ¶ 98.

- **January 30, 2017:** Plaintiff emailed Defendant Sanjay Rai requesting that he discipline

Defendant Michaelian and asked that Defendant Rai "recommend that the College compensate [him] for the monetary damages" resulting from Defendant Michaelian's behavior. *Id.* ¶ 100–02.

- **January 31, 2017:** Plaintiff sent a follow up email to Defendant Rai attaching email exchanges between Plaintiff and Defendant Michaelian. *Id.* ¶ 104.

- **February 1, 2017:** Defendant Rai informed Plaintiff that he would not discipline Defendant Michaelian or recommend that Plaintiff receive monetary compensation. *Id.* ¶ 105.

- **February 1, 2017:** Plaintiff emailed Defendant Rai expressing "shock and surprise" at Defendant Rai's "decision not to perform [his] duties." *Id.* ¶ 106 (alteration in original).

- **February 6, 2017:** Defendant Carson emailed Plaintiff asking him to "refrain from emailing all part-time faculty and other individuals that are not part of the grievance process" because "it is disruptive[.]" *Id.* ¶ 108.

- **February 11, 2017:** Plaintiff emailed a human resources staff member "express[ing] his concern that, since Defendant Michaelian had appointed him to only four credit hours of teaching in the Spring 2017 semester[,] . . . he would not properly be considered for appointment to the full eight credit hours in the subsequent Spring 2018 semester." *Id.* ¶ 123. Plaintiff copied this email to an unknown number of faculty members. *Id.*

- **February 16, 2017:** A meeting took place between Plaintiff and Defendant Michaelian during which Plaintiff asked: "You lied to me didn't you . . . ?" *Id.* ¶ 127.

- **February 23, 2017 [2:58AM]:** Plaintiff requested that Defendant Michaelian "disavow her January 18, 2017 intentional misrepresentation[,]" and copied the email to Defendants Pollard, Rai, Wormack, and Terry. *Id.* ¶ 120.

6

- **February 23, 2017:** Plaintiff emailed Defendant Pollard requesting that he review Plaintiff's earlier February 23 email to Defendant Michaelian "and take the appropriate action against her[.]" *Id.* ¶ 121.

In the midst of these heated exchanges between Plaintiff and the College's management, Plaintiff filed a grievance on February 7, 2017. *Id.* ¶ 110. Plaintiff alleged that Defendant Michaelian had violated the Collective Bargaining Agreement by assigning Professor Lesesne a four-credit-hour course instead of Plaintiff. *Id.* On February 28, 2017, Defendant Michaelian, after reviewing Plaintiff's grievance, "denied [Plaintiff's] request for compensation for the four credit hour course she claimed was 'assigned' to Professor Lesesne on or shortly before January 18, 2017[.]" *Id.* ¶ 111.

### iii.   Defendants' Disciplinary Actions against Plaintiff

As a result of the communications described above, Defendant Michaelian presented Plaintiff with a written reprimand on February 16, 2017, charging him with failure to abide by College Policy 66001, Acceptable Use of Information and Technology. ECF No. 1 ¶ 124. Defendant Michaelian's written reprimand authorized the College to cancel whatever good faith consideration seniority rights Plaintiff had earned previously under the Collective Bargaining Agreement.[8] *Id.* ¶ 125. According to the memorandum supporting Defendant Michaelian's reprimand, Defendant Michaelian based her reprimand on Plaintiff's unnecessary copying of other College employees on emails. *Id.* ¶ 124. Defendant Carson had previously requested that Plaintiff stop this behavior, *Id.* ¶ 70–71, 74, 108, but Plaintiff did not comply.

---

[8] "Good faith consideration means that Management may [not] deny, reduce or cancel the assignment(s) of an employee in a semester, or the appointment of an employee for an entire year" unless one of the seven circumstances outlined in Article 7 of the Collective Bargaining Agreement occurs. ECF No. 10-2 at 15. There are three different types of good faith consideration seniority rights outlined in the Collective Bargaining Agreement (Sections 7.1(B) and 7.2(A)). *Id.* at 14–15. Each type has a different seniority requirement; but all three require the part-time faculty member to be in good standing. *Id.*

On February 27, 2017, Defendant Michaelian recommended in a memorandum to Defendant Tamathia Flowers, Director of Human Resource Operations, that Plaintiff "be suspended, with pay, from his position at the College from now until May 19, 2017, the official end of the Spring 2017 semester." *Id.* ¶ 134. Defendant Michaelian supported her recommendation by citing Plaintiff's alleged failure to abide by College Policy 66001, Acceptable Use of Information Technology. *Id.* Defendant Michaelian stated that, even after the February 16, 2017 written reprimand, Plaintiff copied emails to "multiple individuals, including part-time faculty," as well as "all full-time and even students." *Id.* After meeting with Plaintiff on February 28, 2017—allowing him to present his response to Defendant Michaelian's recommendation—Defendant Flowers approved Defendant Michaelian's recommendation that Plaintiff "be suspended, with pay, effective immediately." *Id.* ¶¶ 138–39. Defendant Flowers also notified Plaintiff that she was recommending his "College email account be disabled immediately" and that he had "the right to grieve this decision" pursuant to the Collective Bargaining Agreement. *Id.* ¶ 140.

After two unsuccessful attempts to convince Defendant Flowers to restore his email account, Plaintiff appealed the disabling of his College email resources to Defendant Carl Whitman, the College's Vice President and Chief Information Officer of Instructional and Information Technology, on March 10, 2017. *Id.* ¶¶ 141, 143.  Plaintiff forwarded his March 10 appeal to Defendants Pollard and Rai asking them to direct Defendant Michaelian to "withdraw her disciplinary actions . . . [and] discipline [Defendant Michaelian] as previously requested." *Id.* ¶ 144. Defendant Whitman denied Plaintiff's appeal on March 16, 2017. *Id.* ¶ 145.

Plaintiff was informed on March 6, 2017 that his "request for an appointment for academic year 2017-2018 [was] denied." *Id.* ¶ 142.

### B.      Procedural Background

Plaintiff filed a *pro se* Complaint in this Court on August 20, 2019, against Montgomery

Community College, DeRionne Pollard, Sanjay Rai, Carolyn Terry, Katherine Michaelian,

Georgia Buckles, Michael Gurevitz, Janet Wormack, Robert Roop, Tamathia Flowers, Krista

Walker, Michael Carson, and Elaine Doong. ECF No. 1. On October 15, 2019, Defendants filed

the instant motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of

Civil Procedure, requesting the dismissal of Plaintiff's Complaint in its entirety. ECF No. 10.

Plaintiff filed his Opposition to Defendants' Motion to Dismiss on November, 12, 2019, in

which he chose not to contest Defendants' Motion to Dismiss with respect to his state law

claims, his federal law claim against Montgomery Community College, and his federal law claim

against Defendants Michaelian, Pollard, Wormack, Rai, Terry, Carson, Flowers, and Whitman in

their official capacity. ECF No. 14. Thus, the only claim addressed in Plaintiff's opposition was

his First Amendment claim "as it pertains to the individual Defendants **acting in their

individual capacities**[.]" ECF No. 14-3 at 2 (emphasis in the original).[9] Defendants filed a reply

on December 3, 2019. ECF No. 17.

## II.      STANDARD OF REVIEW

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(1) of the Federal

Rules of Civil Procedure, asserting that the Court lacks subject matter jurisdiction. ECF No. 10-1

at 17–18. A motion pursuant to Rule 12(b)(1) should be granted "only if the material

jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of

law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The plaintiff bears the

burden of proving that subject matter jurisdiction exists. *Piney Run Pres. Ass'n v. Cty. Comm'rs*

---

[9] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

*of Carroll Cty., MD*, 523 F.3d 453, 459 (4th Cir. 2008). When considering a Rule 12(b)(1) motion, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (internal quotation marks and citation omitted).

Defendants also move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6); *see* ECF No. 10. In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court "must accept as true all the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefights of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations in original) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

Rule 12(b)(6) calls for dismissal where a complaint does not contain "sufficient factual

10

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

### A.   Claims whose Dismissal is Uncontested

Plaintiff does not contest Defendants' Motion to Dismiss with respect to four categories of claims Plaintiff alleged in the Complaint: (1) state constitutional claims; (2) state tort claims; (2) state breach of contract claims; and (4) the federal First Amendment claim against Montgomery Community College and various individual defendants in their official capacities. *See* ECF No. 14-3 at 2.

For Plaintiff's state constitutional and tort claims (Count I as it relates to Article 40 of Maryland's Declaration of Rights, Count II, Count IV, Count V, Count VII, Count VIII, Count IX, and Count X), Plaintiff concedes that he failed to comply with the notice requirements set forth in Maryland's Local Government Tort Claim Act ("LGTCA"), codified at Md. Code Ann., Cts. & Jud. Proc. §§ 5-304 ("an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury"). *See* ECF No. 14-3 at 2. Since Plaintiff concedes his failure to comply with the notice requirements with respect to his state constitutional and tort claims and does not contest Defendants' Motion to Dismiss these claims, Defendants' Motion to Dismiss is granted with respect to all of Plaintiffs' state constitutional and tort claims.

Plaintiff also concedes that he failed to comply with the statute of limitation provisions relevant to his breach of contract claims (Counts III and VI) and thus does not contest

Defendants' Motion to Dismiss with respect to those claims. ECF No. 14-3 at 2. Under Md. Code Ann., State Gov't § 12-201, "the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, in a court of the State, based on a written contract that an official or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee." However, such a contract action "is barred unless the claimant files suit within 1 year after the later of: (1) the date on which the claim arose; or (2) the completion of the contract that gives rise to the claim." Md. Code Ann., State Gov't § 12-202. Plaintiff admits that he failed to comply with this statute of limitation and therefore Plaintiff's breach of contract claims are untimely. Moreover, Maryland's waiver of sovereign immunity for contract actions is limited to actions brought within "a court of the state," Md. Code Ann., State Gov't § 12-201, and thus Plaintiff's breach of contract claims brought in this Court would have been barred by sovereign immunity under the Eleventh Amendment even if they were timely. *See Sharafeldin v. Md., Dep't of Pub. Safety & Corr. Servs.*, 94 F. Supp. 2d 680, 686–87 (D. Md. 2000) (dismissing contract action brought in federal court on the ground of state sovereign immunity). For these reasons, Plaintiff's two breach of contract claims are dismissed with prejudice.

Finally, Plaintiff does not contest Defendants' Motion to Dismiss with respect to Plaintiff's federal First Amendment claim against the College and eight individual Defendants acting in their official capacities "on the basis of their sovereign immunity." ECF No. 14-3 at 2. "State agencies and state instrumentalities are entitled to sovereign immunity from suits brought by individuals in federal court, unless the suit is brought pursuant to a statute passed by Congress containing a valid abrogation of sovereign immunity." *Adams v. Montgomery Coll.*, No. DKC-09-02278, 2010 WL 2813346, at *3–*4 (D. Md. July 15, 2010) (holding that Montgomery

College—*i.e.*, Montgomery Community College—is a state entity for the purpose of sovereign immunity). "[I]ndividuals sued in their official capacity as state agents are entitled to the same immunity." *Id.* Section 1983, the vehicle through which Plaintiff brings his federal First Amendment claim, ECF No. 1 at 3, is not a statute passed by Congress containing a valid abrogation of sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Plaintiff does not contest that Montgomery College and the individual defendants—Michaelian, Pollard, Wormack, Rai, Terry, Carson, Flowers, and Whitman—acting in their official capacity as state agents are entitled to sovereign immunity under the Eleventh Amendment and thus Plaintiff's federal First Amendment claims brought under § 1983 against these defendants are dismissed with prejudice.

### B.    Federal First Amendment Claim Against Michaelian, Pollard, Wormack, Rai, Terry, Carson, Flowers, and Whitman in their Individual Capacities

As a result of Plaintiff's concessions in his Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint, the only remaining claim this court must address in resolving Defendants' Motion to Dismiss is Plaintiff's federal First Amendment claim pursuant to 42 U.S.C. § 1983 against individual defendants Michaelian, Pollard, Wormack, Rai, Terry, Carson, Flowers, and Whitman acting in their individual capacities. *See* ECF No. 14. Specifically, Plaintiff alleges that Defendants violated his First Amendment right to free speech by retaliating against him "for reporting [Michaelian's] Dishonesty and Malfeasance to her College superiors in the College's Academic Affairs Department." ECF No. 1 ¶ 149. Defendants present three arguments in support of dismissal: (i) Plaintiff failed to exhaust his contractual remedies under the Collective Bargaining Agreement, depriving this Court of jurisdiction, ECF No. 10-1 at 19–20; (ii) Plaintiff does not allege sufficient facts to demonstrate a violation of the First Amendment on the part of any of the Defendants in their individual capacities, ECF No. 17 at 6; *see* ECF No. 10-1 at 32–

34; and (iii) Defendants are entitled to qualified immunity, ECF No. 17 at 7; *see* ECF No. 10-1 at 31–32. The Court will address each argument in turn.

> ### i.      Exhaustion of Contractual Remedies

Defendants argue that "[a]ll of Plaintiff's claims should be dismissed with prejudice because they concern Defendants' compliance with the [Collective Bargaining Agreement]'s rules and procedures governing discipline, good faith consideration and initial placement" and "[a]ny questions of compliance with the [Collective Bargaining Agreement] must be pursued through the contractual grievance and arbitration process." ECF No. 10-1 at 19. Defendants support their exhaustion argument with several Maryland Court of Appeals opinions. *See, e.g.*, *Amalgamated Transit Union v. Lovelace*, 441 Md. 560, 561 (2015) ("Maryland law has long recognized the rule that a union member must exhaust the union's internal remedies before filing suit in court"); *Gazunis v. Foster*, 400 Md. 541, 562 (2007) (finding that an individual employee must exhaust his or her contractual remedies before he or she can maintain a suit); *Dearden v. Liberty Med. Ctr., Inc.*, 75 Md. App. 528, 531 (1988) (same). However, Maryland's requirements for filing a claim do not apply to the filing of a federal claim under § 1983 in a federal court.

"When federal claims are premised on 42 U.S.C. s 1983 . . . [the United States Supreme Court has] not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights." *Hochman v. Bd. of Ed. of City of Newark*, 534 F.2d 1094, 1096 (3d Cir. 1976) (quoting *Steffel v. Thompson*, 415 U.S. 452, 472–73 (1974)); *Clark v. Yosemite Cmty. Coll. Dist.*, 785 F.2d 781, 790 (9th Cir. 1986) ("in an action under section 1983, a plaintiff need not exhaust state administrative remedies"). "When appropriate federal jurisdiction is invoked alleging violation

of First Amendment rights . . . [this Court] may not insist that he first seek his remedies elsewhere no matter how adequate those remedies may be." *Hochman*, 534 F.2d at 1097. It is impermissible to require—as Defendants suggest—that Plaintiff take "initial recourse to available state proceedings, *including union grievance proceedings*, for the enforcement of First Amendment rights protectable in federal court pursuant to section 1983." *Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 73 (2d Cir. 1988)  (emphasis added) (reversing the district court's dismissal of plaintiff's first amendment claim on exhaustion grounds); *Bonnell v. Lorenzo*, 81 F. Supp. 2d 777, 788 (E.D. Mich. 1999) ("professors do not need to exhaust either state administrative remedies or remedies provided by collective bargaining agreements prior to their cases being heard in federal courts."), *rev'd on other grounds*, 241 F.3d 800 (6th Cir. 2001); *Mellody v. Upper Merion Area Sch. Dist.*, No. CIV. A. 97-5408, 1998 WL 54383, at *4 (E.D. Pa. Jan. 30 1998) (denying defendants' motion to dismiss and finding that Plaintiff is not required to exhaust contractual remedies with regard to Plaintiff's First Amendment claim), *aff'd*, 216 F.3d 1076 (3d Cir. 2000). Thus, Defendants' argument that Plaintiff's remaining federal First Amendment claim must be dismissed due to Plaintiff's failure to exhaust contractual remedies available under the Collective Bargaining Agreement fails.

   **ii.**  **Failure to State a Claim**

   Defendants argue that Plaintiff's federal First Amendment claim against Defendants Michaelian, Pollard, Wormack, Rai, Terry, Carson, Flowers, and Whitman in their individual capacity should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a claim for which relief can be granted. ECF No. 10-1 at 9.

   "The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that

right." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)). In order to recover for First Amendment retaliation, a Plaintiff must allege "(1) [ ]he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendants' conduct." *Id.* Plaintiff failed to adequately plead the first element, as explained below, and thus consideration of the second two elements is unnecessary.

Because "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions," a government entity "has broader discretion to restrict speech when it acts in its role as employer[.]" *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Consequently, the United States Supreme Court has laid out a two-part inquiry to determine whether a public employee has engaged in protected First Amendment activity: (1) "whether the employee spoke as a citizen on a matter of public concern[;]" and if so, (2) "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.* at 419.

"Though 'public employees do not surrender all their First Amendment rights by reason of their employment,' the First Amendment only protects an employee's speech if the 'employee spoke as a citizen on a matter of public concern." *McReady v. O'Malley*, 804 F. Supp. 2d 427, 439 (D. Md. 2011) (quoting *Garcetti*, 547 U.S. at 418), *aff'd*, 468 F. App'x 391 (4th Cir. 2012)). In contrast, when a public employee speaks "as an employee upon matters only of personal

interest . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement[.]" *Rankin v. McPherson*, 483 U.S. 378, 385 (1987)). "The inquiry is not whether the subject of an employee's speech is on a matter that '*could* be of concern to the public' but rather whether the employee's speech was made 'primarily in his role as an employee.'" *McReady v. O'Malley*, 804 F. Supp. 2d at 439 (emphasis in original) (quoting *DiMeglio v. Haines*, 45 F.3d, 790, 805 (4th Cir. 1995)); *see also Brooks v. Arthur*, 685 F.3d 367, 372 (4th Cir. 2012). "[S]peech contesting managerial decisions[,]" *McReady v. O'Malley*, 804 F. Supp. 2d at 439, and "complaints of interpersonal discord[ ] are not treated as matters of public [concern]," *Brooks*, 685 F.3d at 372 (internal quotation marks omitted) (quoting *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 352 (4th Cir. 2000)); s*ee also Goldstein*, 218 F.3d at 352 ("matters of internal policy, including mere allegations of favoritism, employment rumors, and other complaints of interpersonal discord, are not treated as matters of public [concern]"); *Huang v. Bd of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990) ("it is settled that a public employee's expression of grievances concerning his own employment is not a matter of public concern"); *Barnes v. Small*, 840 F.2d 972, 982–83 (D.C. Cir. 1988) (holding that discharging an employee for speech "address[ing] only the misbehavior of other employees . . . and not matters relating to any broader public interest" does not violate the First Amendment"). "While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints

17

over internal office affairs." *Connick v. Myers*, 461 U.S. at 149.

Plaintiff alleges that his "disclosures of Defendant Michaelian's acts of Dishonesty and Malfeasance dealt with matters of public concern and were therefore within the scope of protection of the First Amendment[.]" ECF No. 1 ¶ 152; ECF No. 14-3 at 31. In support of this conclusion, Plaintiff lays out numerous examples of the allegedly protected communications in his Complaint.

There are fifteen communications in the Complaint related to the exposure of Defendant Michaelian's alleged "Dishonesty and Malfeasance." These disclosures were made between January 18, 2017, the date Plaintiff's name was removed from one of the two courses for which he had been listed as the instructor for the Spring 2017 semester, and March 16, 2017, the date of the last alleged adverse employment action.[10] ECF No. 1 ¶¶ 81–145; *see* ECF No. 14-3 at 5–20; ECF No. 17 at 3–5. These communications can be organized into five categories, with some communications falling into more than one category: (1) Plaintiff contesting managerial decisions, ECF No. 1 ¶¶ 91, 97, 106, 110, 133, 141, 143, 144; s*ee McReady v. O'Malley*, 804 F. Supp. 2d at 439; (2) Plaintiff discussing the alleged misbehavior of another employee, ECF No. 1 ¶¶ 91, 100–02, 104, 121, 131, 144; *see Barnes*, 840 F.2d at 982–83; (3) Plaintiff complaining about his change in duties or potential change in duties, ECF No. 1 ¶¶ 97, 123; *see United States*

---

[10] In Plaintiff's Compliant there were only two adverse actions that he alleged were retaliation for his disclosure of Defendant Michaelian's "Dishonesty and Malfeasance": (1) Defendant Michaelian's February 16 written reprimand; and (2) Defendant Michaelian's February 27 recommendation that Plaintiff be suspended. ECF No. 1 ¶ 148. In his Opposition to Defendants Motion to Dismiss, however, Plaintiff alleged five adverse actions: (1) Defendant Michaelian's February 16 written reprimand; (2) Defendant Michaelian's February 27 recommendation that Plaintiff be suspended; (3) Defendant Flowers' February 28 approval of Defendant Michaelian's recommendation that Plaintiff be suspended; (4) Defendant Flowers February 28 recommendation that Plaintiff's College email be suspended; and (5) Defendant Whitman's March 16 approval of Defendant Flowers' recommendation to disable Plaintiff's College email. ECF No. 14-3 at 21. Because "*pro se* petitions are to be given a liberal construction[,]" *Fitz v. Terry*, 877 F.2d 59 (Table), 1089 WL 64157, at *1 (4th Cir. 1989), this Court will consider all five alleged adverse actions in its analysis and thus will consider communications made after Defendant Michaelian's February 27, 2017 recommendation in its consideration of whether Plaintiff engaged in a protected First Amendment activity.

*v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 466 (1995) (finding that "speech that involves nothing more than a complaint about a change in the employee's own duties" is not speech on a matter of public concern); (4) Plaintiff filing a grievance based on Defendant Michaelian assigning a four-credit-hour-course to Professor Lesesne rather than Plaintiff, ECF No. 1 ¶ 110; *see Huang*, 902 F.2d at 1140; and (5) Plaintiff expressing complaints of "interpersonal discord," ECF No. 1 ¶¶ 120, 129–30; *see Brooks*, 685 F.3d at 375. Thus all fifteen communications Plaintiff presents as protected First Amendment activity are examples of "an employee [speaking] upon matters only of personal interest[,]" *Connick v. Myers*, 461 U.S. at 147, rather than "a citizen [speaking] on a matter of public concern." *McReady v. O'Malley*, 804 F. Supp. 2d at 439.

Plaintiff's reliance on *Daulton v. Affeldt*, 678 F.2d 487 (4th Cir. 1982), and *Dougherty v. School District of Philadelphia*, 772 F.3d 979 (3d Cir. 2014), is inapposite. In *Daulton*, the Fourth Circuit held that a teacher's general criticisms concerning salary, maternity leave, and other benefits are "properly a matter of public interest" and the speaker is thus protected by the First Amendment from retaliatory discharge. *Daulton*, 678 F.2d at 491. However, the teacher in *Daulton* was speaking within the context of a more general critique of the policies of the college in which she taught. *Leachman v. Rector & Visitors of Univ. of Va.*, 691 F. Supp. 961, 963 (W.D. Va. 1988) (describing and distinguishing *Daulton*). "[T]he comments were not solely addressed to the parameters of her own situation." *Id.* In contrast, the communications at issue in the instant case were motivated by and directed towards Plaintiff's own personal employment situation. Likewise, in *Dougherty*, the Third Circuit held that plaintiff's activity was protected by the First Amendment where plaintiff's speech was made to a newspaper, "as a concerned citizen, purporting to expose the malfeasance of a government official with whom he has no close

working relationship[.]" *Dougherty*, 772 F.3d at 993–94. Here, in contrast, Plaintiff disclosed his suspicions of Defendant Michaelian's Dishonesty and Malfeasance internally rather than to a media outlet. In addition, Plaintiff had a close working relationship with Defendant Michaelian, much closer than the relationship in *Dougherty*, further indicating his comments relate to his personal employment situation. ECF No. 1 ¶ 35 ("Defendant Michaelian was responsible for making teaching assignments to all BEACHAMPS faculty members, including part-time faculty members such as Professor McReady.").

Thus, because the "First Amendment only protects an employee's speech . . . on a matter of public concern[,]" *id.*, Plaintiff has failed to plead factual allegations sufficient to support a finding that his speech was protected by the First Amendment and Defendants' Motion to Dismiss is granted. *See* Fed. R. Civ. P. 12(b)(6).

### iii.    Qualified Immunity

Even assuming Plaintiff had sufficiently alleged a First Amendment violation, Plaintiff's claim would be barred by qualified immunity.

Government officials sued in their individual or personal capacities may be entitled to "qualified immunity." *See, e.g.*, *Lane v. Franks*, 573 U.S. 228, 243 (2014). Qualified immunity protects government officials performing discretionary functions from liability damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). As long as the actions of a government official "could reasonably have been thought consistent with the rights they are alleged to have violated[,]" qualified immunity shields that official from liability. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *DiMeglio*, 45 F.3d at 794. Thus, "[q]ualified immunity protects all but the plainly incompetent or those who

20

knowingly violate the law[.]" *Anderson*, 483 U.S. at 638 (internal quotation marks omitted).

"When a plaintiff seeks to hold an official personally liable for his exercise of a discretionary function, the court must, in addressing the qualified immunity defense, consider whether the plaintiff has alleged a violation of law that was clearly established at the time the challenged actions were taken." *DiMeglio*, 45 F.3d at 794. In order to determine whether the plaintiff has asserted a violation of a clearly established right, the Court must focus upon the right "at the level of its application to the specific conduct being challenged[,]" rather than "at [the rights] most general or abstract level." *Id.* at 803; *see also Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (Powell, J.) ("rights must be clearly established under the particular circumstances confronting the official at the time of the questioned action"). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640 (internal citations omitted). Here, if the free speech rights Defendants allegedly violated were not clearly established at the time their challenged actions were taken, they are entitled to qualified immunity.

Assuming *arguendo* that Plaintiff had satisfactorily alleged a violation of his First Amendment rights, Defendants would still be protected by qualified immunity. "The right to write pervasive, hostile emails to one's superiors challenging managerial decisions was not clearly established" at the time Defendants allegedly took adverse action against Plaintiff, and "it is unlikely that such a right will ever be recognized." *McReady v. O'Malley*, 804 F. Supp. 2d at 441. Plaintiff citations to *Daulton v. Affeldt*, 678 F.2d 487 (4th Cir. 1982), and *Dougherty v. School District of Philadelphia*, 772 F.3d 979 (3d Cir. 2014), do not save him. As described above, *Daulton* and *Dougherty* are distinguishable from the case at hand and, consequently,

those cases are not relevant to this Court's consideration of Plaintiff's alleged right "at the level of its application to the specific conduct being challenged." *Dimeglio*, 45 F.3d at 803. Defendants are protected by qualified immunity and thus their Motion to Dismiss is granted on this basis as well.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. A separate Order shall issue.


Date: <u>September 30, 2020</u>                                 ____/s/_____
                                                               GEORGE J. HAZEL
                                                               United States District Judge