**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| EDWARD C. MCREADY, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-19-2401 |
| MONTGOMERY COMMUNITY COLLEGE, *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiff Edward McReady brought this civil action as a *pro se* litigant against his former employer, Montgomery Community College, and several of its officials and staff (collectively, "Defendants"), alleging violations of his right to free expression guaranteed under the First Amendment of the United States Constitution and Article 40 of the Maryland Declaration of Rights, abusive discharge from public employment, breach of contract, and various permutations of tortious interference with current and prospective employment relations. ECF No. 1. Defendants filed a Motion to Dismiss Complaint, ECF No. 10, which this Court granted on September 30, 2020, ECF Nos. 18 & 19. Now pending before the Court is Plaintiff's Motion to Reconsider and Request for Hearing. ECF No. 20.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Plaintiff's Motion to Reconsider is denied.

---

[1] Also pending before the Court is Plaintiff's Motion for Leave to File Supplemental Memorandum in Support of Plaintiff's Motion to Reconsider and Request for Hearing, ECF No. 22, which this Court denies for the reasons discussed below. *See infra* note 6.

1

I.  **BACKGROUND**[2]

   A.  **Factual Background**

The background facts of this action were fully set forth in this Court's previous Memorandum Opinion. ECF No. 18 at 1–8.[3] However, for convenience, a summary of the facts is included below.

   i.  **Plaintiff's First Conflict with the College's Management**

Plaintiff Edward McReady was first employed by Montgomery College ("the College") as a part-time professor from Fall 2000 through Fall 2005. ECF No. 1 ¶ 20. At the end of the Fall 2005 semester, Plaintiff resigned his part-time faculty position. *Id.* ¶ 21. However, Plaintiff returned to the College's part-time faculty at the beginning of the Spring 2014 semester. *Id.* ¶ 22.

From Spring 2014 through Summer 2016, the College issued Plaintiff written contracts at the Lecturer pay scale to teach one or two Accounting courses each semester. *Id.* ¶ 30. In August 2016, however, Plaintiff learned that, under the terms of the Collective Bargaining Agreement between the College and Services Employees International Union, Local 500, CtW ("Collective Bargaining Agreement"), the College should have placed him in the Adjunct II pay rank when the College rehired him in Spring 2014. *Id.* ¶¶ 26, 38. Upon learning of the College's error, Plaintiff contacted the College's Human Resources Department to request placement in the Adjunct II pay rank retroactive to the Spring 2014 semester with full back pay from that semester forward. *Id.* ¶ 38. Despite Plaintiff's request, the College only placed Plaintiff in the Adjunct I pay rank effective retroactively to the beginning of the Fall 2016 semester and did not address

---

[2] Unless otherwise stated, the background facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

his request for back pay. *Id.* ¶ 39.

Finding this result unsatisfactory, Plaintiff contacted various members of the College's management, requesting that they honor his "back pay request." *Id.* ¶¶ 41, 43. As a result of Plaintiff's further communications, Plaintiff was placed in the Adjunct II pay rank effective retroactively to the beginning of the Fall 2016 semester, but the College's management again denied Plaintiff's request for back pay. *Id.* ¶¶ 43, 47.

Again dissatisfied with the College's decision, Plaintiff: (1) filed a grievance on November 14, 2016, *id.* ¶ 57; (2) emailed the Chief Human Resource Officer "accus[ing him] of abusing his authority and violating [the College's] Vision, Mission, and Standards of Service Statement[,]" *id.* ¶ 69; and (3) attempted to elevate the issue to the College's President, *id.* ¶¶ 52–53. None of these actions received an adequate response in Plaintiff's view. Thus, on December 7, 2016, Plaintiff brought his complaints to the Union in an email that copied the College's management as well as all Part-Time Faculty. *Id.* ¶ 80.

### ii. Plaintiff's Second Conflict with the College's Management

In October 2016, Plaintiff received an email from a human resources staff member informing him that it was "the College's intention to offer [him] an assignment consisting of 8 Instructional [credit hours]" for the Spring 2017 semester, ECF No. 1 ¶ 81 (second alteration in original), and was later informed that he had been "added to the Spring 20<u>17</u> schedule of Accounting courses[,]" *id.* ¶ 85 (emphasis in original). However, in January 2017, the College's management notified Plaintiff that "[d]ue to low enrollments . . . one or both of [Plaintiff's] classes may need to be reassigned[,]" and Plaintiff's name was removed from one of the courses for which he had been designated for assignment. *Id.* ¶¶ 87–88. Consequently, Plaintiff asked the College's management whether he would be "assigned one of the . . . presently unassigned

3

Accounting courses on the Rockville campus. . . ?" *Id.* ¶ 88 (second ellipsis in original). In response, Plaintiff was informed that: "The classes at Rockville are being assigned to a full-time faculty member to make load and to part-time faculty with good faith consideration [for] this Spring [20<u>17</u>] semester." *Id.* ¶ 89 (alterations in original). Plaintiff contends this statement was intentionally false (the "False Statement"). *Id.*

Following this initial exchange, from January 19, 2017 until February 23, 2017, Plaintiff and the College's management engaged in numerous communications surrounding Plaintiff's course assignment and the False Statement. *See, e.g., id.* ¶¶ 91–92, 94, 97–98, 100–02, 104–06, 108, 120–21, 123, 127. In the midst of these exchanges, Plaintiff filed a grievance on February 7, 2017, which was denied on February 28, 2017. *Id.* ¶¶ 110–11.

As a result of the communications between Plaintiff and the College's management, Plaintiff received a written reprimand on February 16, 2017, charging him with failure to abide by College Policy 66001, Acceptable Use of Information and Technology. *Id.* ¶ 124. Specifically, the reprimand was the result of Plaintiff's unnecessary copying of other College employees on emails—the College's management had requested previously that Plaintiff stop this practice, but Plaintiff did not comply. *Id.* ¶¶ 70–71, 74, 108, 124. This written reprimand authorized the College to cancel whatever good faith consideration seniority rights Plaintiff had earned previously under the Collective Bargaining Agreement.[4] *Id.* ¶ 125.

On February 27, 2017, the Instructional Dean for Plaintiff's department recommended to the Director of Human Resources Operations that Plaintiff "be suspended, with pay, from his

---

[4] "[G]ood faith consideration shall mean that Management may [not] deny, reduce or cancel the assignment(s) of an employee in a semester, or the appointment of an employee for an entire academic year" unless one of the seven circumstances outlined in Article 7 of the Collective Bargaining Agreement occurs. ECF No. 10-2 at 15. There are three different types of good faith consideration seniority rights outlined in the Collective Bargaining Agreement (Sections 7.1(B) and 7.2(A)). *Id.* at 14–15. Each type has a different seniority requirement, but all three require the part-time faculty member to be in good standing. *Id.*

position at the College from now until May 19, 2017, the official end of the Spring 2017 semester[,]" stating that, even after the February 16, 2017 written reprimand, Plaintiff copied emails to "multiple individuals, including part-time faculty," as well as "all full-time and even students." *Id.* ¶ 134. After meeting with Plaintiff on February 28, 2017—allowing him to present his response to the suspension recommendation—the Director of Human Resource Operations approved the recommendation and further recommended that Plaintiff's "College email account be disabled immediately[.]" *Id.* ¶¶ 138–40. Plaintiff had "the right to grieve this decision" pursuant to the Collective Bargaining Agreement. *Id.* ¶ 140.

After two unsuccessful attempts to convince the Director of Human Resources Operations to restore his email account, Plaintiff appealed the disabling of his College email resources to the College's Vice President/Chief Information Officer of Instructional and Information Technology on March 10, 2017. *Id.* ¶¶ 141, 143. Plaintiff forwarded his appeal to the College's President and to the College's Senior Vice President for Academic Affairs, asking them to direct their subordinates to withdraw the disciplinary actions against Plaintiff and to discipline those subordinates. *Id.* ¶ 144. The College's Vice President/Chief Information officer denied Plaintiff's appeal on March 16, 2017. *Id.* ¶ 145.

Plaintiff was informed on March 6, 2017 that his "request for an appointment for academic year 2017-2018 [was] denied." *Id.* ¶ 142.

### B. Procedural Background

Plaintiff filed a *pro se* Complaint in this Court on August 20, 2019, against Montgomery Community College, DeRionne Pollard, Sanjay Rai, Carolyn Terry, Katherine Michaelian, Georgia Buckles, Michael Gurevitz, Janet Wormack, Robert Roop, Tamathia Flowers, Krista Walker, Michael Carson, and Elaine Doong. ECF No. 1. On October 15, 2019, Defendants filed

a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), requesting the dismissal of Plaintiff's Complaint in its entirety. ECF No. 10. The Court granted Defendants' Motion to Dismiss on September 30, 2020. ECF No. 18 & 19. Specifically, the Court (1) granted as unopposed Defendants' Motion to Dismiss with respect to Plaintiff's state law claims, the federal law claim against Montgomery Community College, and the federal law claim against Defendants Michaelian, Pollard, Wormack, Rai, Terry, Carson, Flowers, and Whitman in their official capacities, ECF No. 18 at 11–13; and (2) granted Defendants' Motion to Dismiss with respect to Plaintiff's First Amendment claims against the individual Defendants acting in their individual capacities because Plaintiff's Complaint failed to state a claim upon which relief could be granted, *id.* at 15–20, or, in the alternative, because Defendants are entitled to qualified immunity, *id.* at 20–22.

On October 14, 2020, Plaintiff filed a Motion to Reconsider and Request for Hearing, arguing the Court erred in holding that Plaintiff failed to state a First Amendment claim. ECF No. 20. Defendants responded in opposition on October 27, 2020, ECF No. 21, and Plaintiff replied on November 9, 2020, ECF No. 24. Plaintiff also filed a Motion for Leave to File Supplemental Memorandum in Support of Plaintiff's Motion to Reconsider and Request for Hearing on October 26, 2020, arguing that the Court erred in holding that Defendants were entitled to qualified immunity. ECF No. 22. Defendants opposed Plaintiff's Motion for Leave to File on October 28, 2020, ECF No. 23, and Plaintiff replied on November 9, 2020, ECF No. 25.

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Rule 59(e) or a motion seeking relief from the judgment pursuant to Rule 60(b). Plaintiff does not clearly indicate under which

6

rule he files his Motion. Nevertheless, because he filed the Motion within 28 days after the Court issued its judgment, *see* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."), and the reasons for reconsideration expressed in the Motion do not indicate it should be construed as a motion brought under Rule 60(b), the Court understands the Motion to be brought under Rule 59(e). *See MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 277–78 (4th Cir. 2008) (finding that "'if a post-judgment motion is filed within [the time period prescribed by Rule 59(e)] and calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e), however it may be formally styled'" but noting that the panel believed "this approach is no longer appropriate" and recognizing that other circuits look to the motion's substance and reasoning rather than its timing (quoting *Dove v. CODESCO*, 569 F.2d 807, 809 (4th Cir. 1978))); *see also Cohen v. Rosenstein*, 804 F. App'x 194, 195–96 (4th Cir. 2020) (per curiam) (unpublished) (construing post-judgment motion as a Rule 59(e) motion where it was filed within 28 days of the entry of judgment).

Courts have recognized three limited grounds for granting a motion for reconsideration pursuant to Rule 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence; or (3) to correct a clear error of law or prevent a manifest injustice. *See U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002). However, a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citation omitted); *see also Kelly v. Simpson*, No. RDB-16-4067, 2017 WL 4065820, at *1 (D. Md. Jan. 26, 2017). "[M]ere disagreement does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993). Such limitations on Rule 59(e) motions are necessary because "[w]ere it

otherwise, then there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court—not to mention its patience." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 453 (4th Cir. 2005) (quoting *Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001)). "[G]ranting a motion for reconsideration is an extraordinary remedy, which should be used sparingly." *Sullivan v. Washington Metro. Area Transit Auth.*, No. GLS-19-00300, 2020 WL 5500185, at *2 (D. Md. Sept. 11, 2020); *see also Pacific Ins. Co.*, 148 F.3d at 403.

### III.  DISCUSSION

Plaintiff does not argue that there has been any intervening change in law or that new evidence is available that was not when the Court made its determination. Plaintiff's Motion may only be granted, therefore, if Plaintiff shows it is necessary to "correct a clear error of law or prevent manifest injustice." *U.S. ex rel. Becker*, 305 F.3d at 290 (citation omitted).

"Clear error or manifest injustice occurs where a court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension[.]'" *Wagner v. Warden*, No. ELH-14-791, 2016 WL 1169937, at *3 (D. Md. Mar. 24, 2016) (quoting *King v. McFadden*, No. JMC-14-91, 2015 WL 4937292, at * 2 (D.S.C. Aug. 18, 2015)). As stated above, "mere disagreement with the Court's previous decision will not suffice." *June v. Thomasson*, No. GLR-14-2450, 2016 WL 7374432, at *3 (D. Md. Dec. 20, 2016). Nor is it enough for the prior judgment to be "just maybe or probably wrong[.]" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (citation omitted). Rather, this Court will only grant a Rule 59(e) motion to alter or amend a judgment based on a clear error of law or manifest injustice when the prior judgment is "dead wrong," striking the court "as wrong with the force of a five-week-old, unrefrigerated dead fish."

8

*Id.* (citation omitted).

Instead of meeting that high standard for showing a clear error or manifest injustice, Plaintiff uses his Motion to Reconsider "to raise arguments or present evidence that could have been raised prior to the entry of judgment"—*i.e.*, Plaintiff makes exactly the types of arguments the Fourth Circuit has deemed inappropriate in the context of a Rule 59(e) Motion. *See Pacific Ins. Co.*, 148 F.3d at 403 (citation omitted). For example, in its previous Memorandum Opinion, the Court found that: (1) "[i]n order to recover for First Amendment retaliation, a Plaintiff must allege [that] . . . he engaged in protected First Amendment activity," ECF No. 18 at 16 (internal quotation marks omitted) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)); (2) "the First Amendment only protects a [public] employee's speech if the 'employee spoke as a citizen on a matter of public concern.'" *Id.* (quoting *McReady v. O'Malley*, 804 F. Supp. 2d 427, 439 (D. Md. 2011), *aff'd*, 468 F. App'x 391 (4th Cir. 2012)); and (3) "all fifteen communications Plaintiff presents as protected First Amendment activity are examples of an employee speaking upon matters only of personal interest, . . . rather than a citizen [speaking] on a matter of public concern[,]" *id.* at 19 (brackets, internal quotation marks, and citations omitted). In Plaintiff's Motion to Reconsider, Plaintiff disagrees with the Court's third finding, arguing his communications touched on "two principle 'matters of public concern[:]'" (1) "the education of postsecondary students in Maryland;" and (2) "the welfare of the community of public employees in their employment relations in Montgomery County Maryland." ECF No. 20-2 at 29. To the extent Plaintiff did not already make this argument in his original opposition to Defendants' Motion to Dismiss, *see* ECF No. 14-3, he certainly could have. Plaintiff does not cite a single source or make a single point that was not previously available to him, instead he improperly attempts to relitigate an issue this

Court has already decided.[5] *See Pacific Ins. Co.*, 148 F.3d at 403. Moreover, Plaintiff tries to use *Daulton v. Affeldt*, 678 F.2d 487 (4th Cir. 1982), a case this Court previously found distinguishable from the instant case, ECF No. 18 at 19, to support his argument that his communications were protected First Amendment activities because they touched on matters of public concern. ECF No. 20-2 at 34–36. Plaintiff fails to convince the Court, however, that its determination that *Daulton* is distinguishable—a determination made in exactly this context, *i.e.*, in the context of deciding whether Plaintiff's communications, like the communications in *Daulton*, addressed matters of public concern—was "dead wrong[.]" *TFWS, Inc.*, 572 F.3d at 194. Because Plaintiff has not shown a clear error or a manifest injustice in the Court's prior decision, Plaintiff's Motion to Reconsider is denied.[6]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Reconsider is **DENIED**. A separate Order shall issue.

Date: July 6, 2021

/s/
GEORGE J. HAZEL
United States District Judge

---

[5] Nowhere is Plaintiff's inappropriate attempt to relitigate old matters more blatant than in Section II of his Motion, where Plaintiff simply "incorporate[s] his argument from his opposition to Defendants' dismissal motion[.]" ECF No. 20-2 at 37; *see also Pacific Ins. Co.*, 148 F.3d at 403 (stating that a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment" (citation omitted)).

[6] Plaintiff also filed a Motion for Leave to File Supplemental Memorandum in Support of Plaintiff's Motion to Reconsider. ECF No. 22. The Supplemental Memorandum argues that the Court's finding that Defendants are entitled to qualified immunity is wrong. *Id.* However, because Plaintiff fails to successfully challenge, under Fed. R. Civ. P. 59(e)'s narrow grounds for relief, the Court's finding that Plaintiff failed to state a First Amendment claim upon which relief can be granted, the Court will uphold its dismissal of Plaintiff's Complaint regardless of any qualified-immunity-related arguments. Moreover, the arguments contained in the Supplemental Memorandum are merely attempts to relitigate old matters or are arguments that could have been raised previously, and thus are inappropriate grounds for granting a Motion to Reconsider under Fed. R. Civ. P. 59(e). *See Pacific Ins. Co.*, 148 F.3d at 403. Thus, "because the supplemental memorandum will not aid in this court's decision, the motion for leave to file it will be denied." *U.S. Home Corp. v. Settlers Crossing, LLC*, No. DKC-08-1863, 2012 WL 3536691, at *3 n.6 (D. Md. Aug. 14, 2012); *see also German Am. Cap. Corp. v. Morehouse*, No. GJH-13-296, 2017 WL 3411941, at *2–*3 (D. Md. Aug. 4, 2017) ("[T]he decision to permit a party to file supplemental submissions is within the Court's discretion." (quoting *In re Repetitive Stress Inj. Litig.*, 165 F.R.D. 367, 371 (E.D.N.Y. 1996))).